Melvin DAVIES *v.* STATE of Arkansas

CR 85-60                                              688 S.W.2d 738

Supreme Court of Arkansas
Opinion delivered May 6, 1985
[Rehearing denied June 6, 1985.]

*Jerry E. Mazzanti*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. On January 5, 1984, at a time when the appellant Melvin Davies and his wife were separated, he went to see her at her place of employment in Eudora. After about two hours of conversation the couple got into an argument, and Davies shot her in the chest with a .357 magnum pistol. He was charged with first-degree battery by having caused serious physical injury. Upon trial by jury he was found guilty and sentenced to a term of 15 years. His appeal comes to this court as presenting an issue of statutory interpretation. Rule 29(1)(c).

The first of Davis's three arguments for reversal is that the trial judge should have complied with the mandatory language of Ark. Stat. Ann. § 41-605 (Repl. 1977). That statute provides that whenever a defendant charged in circuit court files notice (which Davies did not file) that he will put in issue his mental fitness to proceed, or "there is reason to doubt his fitness to proceed, the court . . . shall immediately suspend all further proceedings in the prosecution." The court may retain the jury or declare a mistrial. Upon suspending the proceedings the court shall direct that the defendant be examined at a regional mental health center or by a psychiatrist appointed by the court or be examined

at the State Hospital or be committed to that hospital for not exceeding 30 days, for examination. In this case no such action was requested or taken.

■ Under the statute the trial judge may suspend the proceedings himself if he has reason to doubt the defendant's fitness to proceed and certainly must do so in many situations. Such a situation, however, did not arise in this case.

■ It is plain that the defense did not want a suspension of the trial. There was no request for a pretrial examination of Davies. On voir dire defense counsel questioned the jurors about their willingness to give Davies the benefit of the defense of mental disease or defect, about which they would be instructed. No request for a suspension was ever made. The defense came to court prepared to offer proof of two defenses: mental disease or defect and justification for the use of deadly physical force in self defense. Eventually both defenses were submitted to the jury by AMCI instructions. Davies testified that when he shot his wife she was coming at him with a pair of scissors. He also testified, at age 31, that he had been taking medication for epilepsy for 16 years. He sometimes forgot to take it. His doctor testified that Davies had been taking phenobarbital for his epilepsy, that the drug could be addictive, that an addicted patient could stop using the drug and suffer withdrawal effects, and that it is theoretically possible that such a person could not control himself or be responsible for his conduct. The doctor did not know whether Davies was suffering from withdrawal when he shot his wife; if so, it was because he made the choice not to take his medication. The jury's verdict rejected the two defenses. There was no motion for a new trial or other postjudgment relief. Upon this record Davies is not in a position to invoke the statute for the first time on appeal, after having taken his chances upon the possibility of a favorable verdict.

The second point for reversal is that the court should not have denied a pretrial defense motion to strike certain parts of a written statement by the State's medical witness, introduced by stipulation. The matter objected to is typified by this excerpt from the statement:

Q. Were the injuries which you found Irma Davies to have and which you described potentially life threatening?

A. Very life threatening. In fact, it's really a miracle she ever got to the hospital in the first place and that she survived. She was in profound shock when she came in. She had to be given twenty-two units of packed cells during surgery . . . and we have to give her platelets of blood after surgery.

■ Counsel asked that all of the answer be stricken except the first three words: "Very life threatening." The trial judge ruled that since the State had to prove the infliction of serious physical injury, the entire answer was admissible, and its probative value outweighed any possible prejudice. His ruling was right. All the matter in the two-page statement was admissible. We do not find any of it to have been unnecessarily or prejudicially inflammatory.

Finally, it is argued that the prosecutor should not have been permitted to cross-examine a defense witness, Dr. Talbert, on the basis of a book not shown to be reliable. The prosecutor began this part of his cross examination by saying that to learn a little about epilepsy he had gotten at a drugstore a book, "Seizures, Epilepsy and Your Child," by a medical doctor, George Lago. The witness was not familiar with the author or the book and could not concede that Lago is an expert in the field. Upon objection the court ruled that the prosecutor could quote from the book and ask if the witness agreed with it. The prosecutor then summarized a few sentences in the book, one being that addiction to phenobarbital has not been a problem in children with epilepsy who have received the drug for several years. The witness said he could not agree completely, because it takes less time to become addicted to barbiturates such as Seconal that act more rapidly than others. Dr. Talbert added: "I do not agree with the statement that phenobarbital is not addictive, because it is."

■■ The trial judge was mistaken in allowing counsel to read from a book not shown to be established as a reliable authority. The Uniform Rule of Evidence permits learned treatises to be used in the cross examination of an expert witness, but the treatise must be established as a reliable authority "by testimony or admission of the witness or by other expert testimony or by judicial notice." Rule 803(18). That necessary foundation for the use of Lago's book as a basis for cross examination was not laid; so the objection should have been

sustained when it was made.

■■ Even so, the question is whether the error was prejudicial, for we order a new trial only for prejudicial error. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 435 (1984). The use of the book at most brought before the jury a basis for believing that phenobarbital is not addictive. Nevertheless, with or without Lago's statement, it was not sufficient for Davies to prove merely that he was in fact addicted to the drug. To sustain the defense of mental disease or defect he had to go a step farther by showing that as a result of his addiction he lacked capacity to conform his conduct to the requirements of law or to appreciate the criminality of his conduct. Ark. Stat. Ann. § 41-601 (Repl. 1977).

That additional proof is lacking. Davies's expert medical witness, Dr. Talbert, did not so testify. Davies himself remembered the shooting, but he attributed his action to self defense. He said he had been a deputy sheriff and for that reason had a pistol with a hair trigger. For some time before the shooting he had been carrying the gun, in a holster, because of incidents around his house at Lake Village. He testified that during the argument he got up to leave, "and she grabbed the pair of scissors, she told me that I had threatened her for the last time. . . . And she kicked her shoes off, started around this table with the scissors. I met her on the corner and tried to take the scissors from her. When I reached for the scissors she just drew them back and just charged at me, and I just. . . . (Crying)." When the witness resumed his testimony he did not complete his statement. Later, on cross examination, he again failed to complete his thought, the record reading: "I don't know if I pointed that gun or not, I just jerked the gun out and with it . . ."

The point is, Davies described the incident in detail, but he said nothing to establish the defense of mental disease or defect by attributing the shooting to possible drug addiction. The use of Lago's book to negate that possibility was harmless error; so there is no basis for a new trial.

Affirmed.