James Scott RUSH *v.* STATE of Arkansas

CR 95-1192                                    919 S.W.2d 933

Supreme Court of Arkansas
Opinion delivered April 15, 1996

148

*McCormick & Kennedy, P.A.*, by: *David H. McCormick* and *James D. Kennedy*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal concerns three alleged errors that occurred during the sentencing phase of appellant James Scott Rush's trial. Rush was charged with kidnapping Gena Hambuchen and with residential burglary. Both offenses allegedly took place on September 25, 1994. During the guilt phase of the jury trial, Rush was convicted of the lesser included offense of false imprisonment in the second degree, a Class A misdemeanor. Class A misdemeanors carry a maximum jail term of one year or a fine not exceeding $1,000 or both. Ark. Code Ann. §§ 5-4-201(b)(1), 5-4-401(b)(1) (Repl. 1993).

After hearing testimony at the sentencing phase, the jury returned a verdict of one year in jail and a fine of $1,000, and Rush was sentenced accordingly. His three asserted errors on appeal are: (1) it was error to admit testimony by a victim of a prior battery conviction; (2) it was error for the State to inquire into a prior altercation between Rush and a third party; and (3) it was error to allow the mother of the victim to testify about the victim's ensuing psychological problems in response to questions by the prosecutor, who used the Diagnostic and Statistical Manual of Mental Disorders to frame his questions. We hold that the first point has merit, and we reverse and remand.

The facts surrounding the first point are these. As the sentencing phase began, Rush moved in limine to exclude the victim of a prior battery conviction (Douglas Paul Sweeney) from testifying about the facts and circumstances surrounding that conviction. The

conviction stemmed from a shooting incident in 1989 in Harrison for which Rush had pled guilty. The trial court denied the motion in limine and made the following ruling:

> — I'm going to have to rule in this fashion, and this is the reason: The proof in this case was some proof of a threat to kill the victim. The defendant was found guilty of a crime which involved the holding of the victim for a period of time, even though it was not kidnapping. The defendant has not denied the fact that he made the calls involving the threats to kill. At a previous time in the defendant's history, he did use a firearm on another person, and I think this is one of the aggravating factors that may be used. So I'm going to deny the motion in limine and permit the State to put that evidence on.

The jury was then instructed that it was to hear additional evidence to be considered in determining the appropriate sentence.

The State's first witness was Douglas Paul Sweeney. On direct examination, he testified that in 1989, he encountered Rush in the Harrison High School parking lot. He testified that he, along with some friends, was driving around and that the high school parking lot was a hang-out. When they pulled up, they heard someone screaming, yelling, and cursing. They approached the man, whom Sweeney identified as Rush, and asked him what his problem was. Rush responded that he, Sweeney, was his problem. Words were exchanged, and Rush pulled out a gun, shot in the air, and turned the gun on Sweeney. He threatened to kill Sweeney and his entire group. Sweeney took a couple of steps toward Rush, and Rush shot him in the left leg. Rush subsequently pled guilty to third-degree battery, a Class A misdemeanor.

Rush's counsel then cross-examined Sweeney. He asked if Sweeney was drunk or high on drugs on the night of the shooting incident. He also asked about one of Sweeney's friends, Doug Hankins, who was armed with a machete at the time of the shooting. The direct examination and cross-examination comprised eight pages of the record. Rush contends that he was prejudiced by this examination concerning a crime that took place five years earlier and that the statute in question does not contemplate live testimony by a previous victim.

Resolution of whether it was appropriate to allow testimony

from a victim of a prior crime turns on this court's interpretation of Ark. Code Ann. § 16-97-103(2) (Supp. 1993), which reads in part:

> Evidence relevant to sentencing by either the court or a jury may include, but is not limited to, the following, . . . .

> . . . .

> (2) Prior convictions of the defendant, both felony and misdemeanor. The jury may be advised as to the nature of the previous convictions, the date and place thereof, the sentence received, and the date of release from confinement or supervision from all prior offenses;

Specifically, we must determine what is meant by: the "jury may be advised as to the nature of the previous convictions." Rush vigorously contends that this language does not envision testimony from victims of prior crimes. The State, for its part, argues equally as forcefully that this court in previous cases has defined "nature of the offense" as including the facts and circumstances surrounding the offense. *See Brown v. State*, 316 Ark. 724, 875 S.W.2d 828 (1994); *Combs v. State*, 270 Ark. 496, 606 S.W.2d 61 (1980).

The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *McCoy v. Walker*, 317 Ark. 86, 876 S.W.2d 252 (1994); *Mountain Home Sch. Dist. v. T.M.J. Builders, Inc.*, 313 Ark. 661, 858 S.W.2d 74 (1993). Here, the plain and ordinary meaning of "nature" is: "A kind, sort, type, order; general character." *Black's Law Dictionary*, p. 1027 (6th ed. 1990); *see also Webster's New World Dictionary*, p. 904 (3rd Ed. 1989). Thus, it appears that the plain meaning of the term "nature of the previous convictions" refers to the general character of the pertinent crime.

By Act 535 of 1993, the General Assembly bifurcated criminal trials and authorized the State to present additional relevant evidence, including proof of the nature of previous convictions, during the penalty phase of a trial. *See* Ark. Code Ann. § 16-97-101, *et seq.* (Supp. 1993). But we do not agree that authorizing the State to advise the jury of the nature, or general character, of previous convictions equates to authorizing a relitigation of those matters. In neither of the two cases relied on by the State was that permitted. For example, in *Brown v. State, supra*, the charge at issue was felon in

possession of a firearm, and the question on appeal was whether part of the judgment showing the length of sentence for the previous felony should have been excised as prejudicial. We stated that the jury was entitled to know the nature and circumstances of the prior conviction, which was an element of the charged offense, and, thus, there was no abuse of discretion by the trial court in allowing the complete felony judgment to be offered into evidence.

Similarly, in *Combs v. State, supra,* the defendant sought to redact that portion of a certified copy of his judgment of conviction which stated that the felony involved for a felon-in-possession-of-a-firearm charge was second-degree murder. Again, the prior felony was an element of the charge, and we held that the trial court did not err in refusing to delete the description of the felony. Both of these decisions were eminently correct. In both cases, the nature of the previous felony offense was proved by a copy of the judgment. In neither case did the State call the victim of the prior felony as a witness and seek to develop the facts of that crime by direct examination.

■ Act 535 of 1993 provides that proof of prior convictions shall follow the procedures outlined in the Habitual Offender Act. Ark. Code Ann. § 16-97-104 (Supp. 1993). Under the Habitual Offender Act, after a determination of guilt by the jury, the trial court hears proof of a charged habitual offender's prior convictions outside of the presence of the jury. Proof of previous convictions is sufficient if in the form of a certified copy of the conviction or penal record. Ark. Code Ann. § 5-4-504 (Repl. 1993). The court then instructs the jury on the number of such offenses and the statutory range. Ark. Code Ann. § 5-4-502 (Repl. 1993). We have had occasion to discuss what proof may be presented by a habitual offender in the penalty phase:

> We explained in *Heard v. State, supra* [272 Ark. 140, 612 S.W.2d 312 (1981)], that the purpose of a bifurcated trial is to protect the defendant by keeping evidence of prior convictions from the jury to assure that an accused person will not be convicted on the basis of his or her past record. In the sentencing phase, the state may only introduce evidence of prior convictions, and the accused may only introduce evidence to rebut the existence of those convictions. Nothing in § 16-90-205 suggests the General Assembly intended anything else, and we know of no constitutional provision

which requires the trial to be opened in the sentencing phase to evidence the accused could have but declined to present in the guilt-innocence phase.

*Conley* v. *State*, 305 Ark. 422, 424-425, 808 S.W.2d 745, 747, *cert. denied*, 502 U.S. 876 (1991). In reaching this conclusion, we quoted from an earlier decision, which did not involve a bifurcated trial, to the effect that a defendant's explanation concerning a prior offense should not be used to retry the earlier case. *See Jones* v. *State*, 277 Ark. 345, 641 S.W.2d 717 (1982). That, of course, is the danger associated with the strategy followed by the State in the case before us. The net effect of our caselaw has been to limit proof of prior convictions in the habitual-offender context to the convictions themselves and to prevent a reopening of the matter by testimony relating to the convictions.

We are mindful that proof of aggravating circumstances in capital murder cases is different. *See* Ark. Code Ann. § 5-4-601, *et seq.* (Repl. 1993). A case in point is *Ward* v. *State*, 308 Ark. 415, 827 S.W.2d 110, *cert. denied* 121 L. Ed.2d 79 (1992). In *Ward*, we held that photographs of the victim of a prior Pennsylvania voluntary manslaughter conviction as well as verbal testimony from a Pennsylvania police officer about the condition of the body were relevant to establish the following aggravating circumstance:

> (3) The person previously committed another felony, an element of which was the use or threat of violence to another person or the creation of a substantial risk of death or serious physical injury to another person;

Ark. Code Ann. § 5-4-604(3) (Repl. 1993). The police officer testified that the body had marks on the neck and the knuckles were scraped. He further revealed that the victim's purse contained a photograph of the defendant and his telephone number.

The instant case, though, is readily distinguishable from *Ward* v. *State, supra*. Here, proof of aggravating circumstances is not at issue. Rather, the issue is how to appropriately advise the jury of the nature of a previous conviction. We hold that live testimony from a victim of a crime which occurred five years earlier goes far beyond advising the jury of the nature, or general character, of that conviction. A certified copy of the information and judgment of conviction would have easily sufficed.

■ There are substantial policy considerations involved in holding as we do today. First, a defendant should not be forced to defend a second time against a previous charge and conviction. Nor should a defendant be permitted to offer testimony in mitigation of an earlier conviction. Secondly, judicial economy factors into our decision because cross-examination will inevitably follow direct examination of a victim, as it did in the instant case, and the spectre of a trial within a trial looms large. We can see how allowing mini trials of a crime five years later could work to the disadvantage of both the State and the defense. Witnesses could disappear, evidence could be lost, and memories could fade. Without clear direction from the General Assembly that advising the jury of the nature of the previous conviction entails live testimony from victims of those crimes, we decline to interpret the statute as permitting it. For that reason we reverse the sentence and remand this case for the limited purpose of resentencing.

The dissenting opinion cites various cases for the proposition that a trial court has discretion over what may be relevant proof during the penalty phase. We do not disagree with that statement of the law. However, in none of the cases adduced was prior victim testimony the issue. In one capital murder case cited, the medical examiner testified during the penalty phase about the autopsy performed on a previous murder victim. See *People v. Hope*, 168 Ill. 2d 1, 658 N.E.2d 391 (1995). But, as already noted in this opinion, capital murder cases involve aggravating circumstances which are defined by statute. As discussed above, this court has held that a police officer's testimony about a prior crime was permissible to prove the aggravating circumstance of "the use or threat of violence to another person" during the penalty phase of a capital murder trial. *See Ward v. State, supra; see also* Ark. Code Ann. § 5-4-604(3) (Repl. 1993).

We further observe that Act 535 of 1993 does provide for the admission of other relevant evidence during the penalty phase of criminal trials, including "relevant character evidence." Ark. Code Ann. § 16-19-103(5) Supp. 1993). However, we cannot conclude that this statutory category coupled with judicial discretion authorizes prior victim testimony and what amounts to a retrial of a previous conviction.

■ An issue raised in this appeal may well occur at the resentencing, and for that reason, we address it. On cross-examina-

tion of two defense witnesses — James Bolin and Nancy Kersh — the State questioned whether either witness knew about a fight between Rush and a man at the North Forty Club in 1993. The defense only objected when the question was asked to Kersh. She had testified on direct examination that Rush was like a member of the family and had been a protector of her children. At first, the trial court sustained the objection and admonished the jury, but the court reversed itself and allowed the questioning as permissible cross-examination. We do not believe that this constituted an abuse of discretion. The State was well within its rights to delve into Rush's character once the door had been opened by his own witness. Ark. R. Evid. 404(a)(1); *Smith v. State*, 316 Ark. 407, 872 S.W.2d 843 (1994).

We conclude that the third issue of the prosecutor's use of a medical manual in direct examination of the victim's mother is unlikely to reoccur at resentencing.

Reversed and remanded for the limited purpose of resentencing.

JESSON, C.J., concurs in part, dissents in part.

GLAZE, J., dissents.

BRADLEY D. JESSON, Chief Justice, concurring in part; dissenting in part. While I agree that this case must be reversed for resentencing, my beliefs are based on grounds different than those expressed in the majority opinion. The majority's position regarding what constitutes the "nature of the previous convictions" in Ark. Code Ann. § 16-97-103(2) (Supp. 1993), in my view, is much too limiting. I do not interpret this statute as erecting a *per se* bar to the admission of witness testimony from victims of previous convictions.

The State asks us to interpret the provision at issue to include the facts and circumstances surrounding the previous offense. While the majority relies on a dictionary definition in accepting the appellant's limiting construction of the term "nature," the State's proposed interpretation is consistent with decisions from other jurisdictions. *See e.g., People v. Hope*, 658 N.E.2d 391 (Ill. 1995)(*citing People v. Owens*, 464 N.E.2d 261 (Ill. 1984)("When a prior conviction has been proved, the prosecution may introduce evidence concerning details of that offense, as long as that information is

relevant and reliable."); *State v. J.E.B.*, 469 N.W.2d 192, 195 (Wis. App. 1991), *cert. den.* 112 S.Ct. 1484 (1991). I find the Wisconsin Supreme Court's interpretation of "nature" particularly persuasive:

> It is not the philosophy of modern criminal law that the punishment fit the crime alone and that for every violation of a particular statute there be an identical sanction. In light of the function of the law to deter similar acts by the defendant and others and to rehabilitate the individual defendant, it is essential that a sentencing court consider *the nature of the particular crime, i.e., the degree of culpability - distinguishable from the bare-bones legal elements of it - and the personality of the criminal.* The interests of both society and the individual must be weighed in each sentencing process.

*McCleary v. State*, 182 N.W.2d 512, 517 (Wis. 1971)(Emphasis added); *see also State v. J.E.B., supra.* Such an interpretation is consistent with the "Statement of sentencing policy" in Ark. Code Ann. § 16-90-801 (a)(1)(Supp. 1995), which provides that one of the primary purposes of sentencing is "[t]o punish an offender commensurate with the *nature and extent of the harm caused by the offense, taking into account factors that may diminish or increase an offender's culpability."* (Emphasis added.)

The United States Supreme Court has upheld the consideration of a defendant's prior convictions as well as a defendant's past criminal behavior, even where no conviction resulted from such behavior. *Nichols v. United States*, ___ U.S. ___ (1994)(sl. op., at 9); *Williams v. New York*, 337 U.S. 241 (1949). The Court has further held that the state could consider, as a sentence enhancement factor, visible possession of a firearm during the felonies of which a defendant was found guilty. *McMillan v. Pennyslvania*, 477 U.S. 79 (1986); *Nichols, supra,* sl. op., at 10. And in terms of sentencing by a judge, the Court has held that the judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Id., quoting United States v. Tucker*, 404 U.S. 443, 446 (1972). Based on this backdrop of authority, I believe a more reasonable interpretation of the statute at issue would be to permit evidence concerning the details of a prior offense, so long as the trial court determined that the evidence is relevant and reliable.

In this case, the trial court found that the underlying facts of

the battery conviction were relevant because, like the facts in the present charge, the battery involved a threat to kill the victim. As this court does not have before it a record of the facts presented during the guilt phase, I would decline to reverse on this issue, as the court cannot properly review whether the trial court abused its discretion in determining that Sweeney's testimony was relevant in the absence of a complete record.

I would, however, reverse this case for resentencing based on the third question presented. During the prosecutor's questioning of the victim's mother, he asked if she had visited with his victim witness coordinator regarding some matters contanied in the *Diagnostic and Statistical Manual of Mental Disorders*. Without establishing this treatise as reliable authority or qualifying the victim's mother as an expert, the prosecutor proceeded to ask the victim's mother if she was familiar with "post-traumatic stress disorder." Reading from this manual, he inquired as follows:

> QUESTION BY MR. FOSTER: Has your daughter experienced items outside the range of normal human experiences? Do you think most people go through this? Ms. Hambuchen replied no.

> QUESTION BY MR. FOSTER: Does she ever relive the event of being awakened in the middle of the night and kidnapped?
> Ms. Hambuchen responded yes.

> QUESTION BY MR. FOSTER: Does she ever exhibit any type of emotional distress? Ms. Hambuchen responded yes.

> QUESTION BY MR. FOSTER: Is she as emotionally responsible as she was prior to the event? Ms. Hambuchen responded no.

> QUESTION BY MR. FOSTER: Do normal events affect her and normal emotional stimuli affect her the way it did before she was kidnapped? Ms. Hambuchen responded no.

> QUESTION BY MR. FOSTER: Does she appear to be less excitable and less affected by things going on around her? Ms. Hambuchen responded yes.

> QUESTION BY MR. FOSTER: How does she respond to external stimuli such as sound? Ms. Hambuchen responded

that they scare her.

Arkansas Rule of Evidence 701 governs opinion testimony of lay witnesses, and permits opinion testimony by lay witnesses in observation of everyday occurences, or matters within the common knowledge of most persons. *Felty* v. *State*, 306 Ark. 634, 816 S.W.2d 872 (1991). Here, the victim's mother was never qualified as an expert and did not have the requisite first-hand personal knowledge to testify as to the presence of factors relating to post-traumatic stress disorder. Moreover, the treatise used by the prosecutor was never established as reliable authority. In cases involving A.R.E. 803(18), which permits statements from learned treatises to be read into evidence if relied on by an expert witness, we have held that it is error to allow counsel to read from a book not shown to be established as a reliable authority. *Davies* v. *State*, 286 Ark. 9, 688 S.W.2d 738 (1985). Even the introduction to the treatise itself contains cautionary statements to the effect that the proper use of the criteria therein requires specialized clinical training that provides both a body of knowledge and clinical skills. *See Diagnostic and Statistical Manual of Mental Disorders* at xxvi and xxix (3d ed. rev. 1987). In my view, the trial court erred in allowing the prosecutor to use this manual to question the victim's mother. As the jury was left with the distinct impression that the victim suffered from post-traumatic stress disorder, I must conclude that this error was prejudicial requiring reversal and remand for resentencing.