Donald HEAPE *v.* STATE of Arkansas

CA CR 03-1446                                192 S.W.3d 281

Court of Appeals of Arkansas
Division IV
Opinion delivered September 22, 2004

*Morley Law Firm*, by: *Stephen E. Morley*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. Donald Heape was tried before the bench in the Pulaski County Circuit Court on the charge of committing sexual indecency with a child. He was convicted and was sentenced to thirty-six months' probation and a fine of $250. On appeal he challenges the sufficiency of the evidence. Under Arkansas Code Annotated section 5-14-110(a)(1) (Supp. 2001), a person who is eighteen years old or older commits the crime of sexual indecency with a child if "the person solicits another person who is less than fifteen years of age. . . to engage in sexual intercourse, deviate sexual activity, or sexual contact." Appellant contends on appeal, as he did below in motions for a directed verdict, that statements he made to a fourteen-year-old girl did not constitute a solicitation. We disagree and therefore hold that the evidence was sufficient to uphold the conviction.

The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or

circumstantial. *Alexander v. State*, 78 Ark. App. 56, 77 S.W.3d 544, (2002). Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* The longstanding rule in the use of circumstantial evidence is that the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused to be substantial, and whether it does so is a question for the fact finder. *Id.*

The events from which the charge arose occurred on September 3, 2002, when appellant was thirty years old. Rachel Willingham testified that on September 3 she went next door to babysit in the evening, as she usually did each week; Rachel was fourteen at the time. Rachel testified that her next-door neighbors were appellant Donald Heape, Mr. and Mrs. Heape, and their two grandchildren, boys around ages five and seven. (Mrs. Heape testified that Donald was her son.) Rachel stated that she arrived at the Heapes' home, that Mr. and Mrs. Heape left, and that Donald came to the residence about forty-five minutes later. Rachel testified that Donald came up behind her while she was in the kitchen getting ice cream for the boys and said to her, "I'll pay you five-hundred bucks if you'll have sex with me." Rachel further testified:

> I kind of shook my head and pretty much just walked away. Right after that, he was on the porch. He told me to come out on the porch for a second and I did. He said, "You know I was just kidding." When I said okay, he said, "But I'll pay you a thousand to do it." I again told him no and he said, "Oh, I'm just kidding. I'm just kidding." I did not think he was kidding. I felt very uncomfortable.

> This was near the end of the time when I was babysitting the kids. Donald told the kids that they had a really good babysitter and to give me a kiss. They said they did not want to do that. Donald said, "Oh, it's easy. Just do this," and then he kissed me on more my neck [sic], and that was it.

Rachel testified that she walked home after Mr. and Mrs. Heape returned; that although Mrs. Heape came and asked her if Donald had hurt her or if anything had happened, she told Mrs. Heape that she was "just uncomfortable" and did not say what had happened; but that she eventually told her mother.

Rachel testified that when Donald said that he would give her $500 to have sex with her, she understood that to mean sexual

intercourse; and that she took his request to be a serious one. She stated that she had never seen anyone intoxicated and did not know if he was intoxicated, but that he was drinking beer and was sitting in a corner drinking beer when Mr. and Mrs. Heape got home. On cross-examination she testified: "He did not say to me, 'Will you have sex with me for $500?' He said, 'I would pay $500 to have sex with you.' That was a fair statement." She also stated that she did not think that she would be raped or that anything bad would happen, that Donald produced no money and took no overt action to have sex with her, and that she just wanted to get out of there.

Sherry Shaw, Rachel's mother, testified that Mrs. Heape told her during initial arrangements about babysitting that Donald had a house key but that Mrs. Heape did not expect him to come in at any time, and that Mrs. Heape said that no males would be allowed in the house during babysitting. Ms. Shaw also testified that she talked to Rachel about "the birds and the bees" and had instructed her to inform an adult if inappropriate contact were to happen.

Ms. Shaw testified that Mrs. Heape telephoned her to say that there was something she should know about Rachel's babysitting on September 3; that Mrs. Heape asked if Rachel had said anything, to which Ms. Shaw replied no; and that Mrs. Heape said that Donald had come home while Rachel was babysitting. Ms. Shaw testified that while driving home from a football game three days later, she asked Rachel if there was something she wanted to talk about. Ms. Shaw testified that she persisted when Rachel hesitated; that Rachel said something had happened; that they pulled to the side of the road; that Rachel said that it was hard to talk about; that her mother asked if someone had come in to the house while Rachel was babysitting; and that Rachel said yes and told her mother what had happened.

Mrs. Heape testified that when she and her husband returned from choir practice on September 3, her grandsons and Rachel were on the couch watching television, and Donald was talking on the telephone at the desk with his feet propped up, was drinking beer, and was extremely intoxicated. Mrs. Heape testified that Rachel and the kids said hi; that Rachel said yes when Mrs. Heape asked if everything was okay; that Mrs. Heape walked Rachel into the garage and asked if she was okay, and Rachel said she was; and

that Rachel was very calm, was not crying, and just smiled. Mrs. Heape testified that she did not know then about an inappropriate comment.

Appellant contends that the evidence was insufficient to show that he made a solicitation or intended to do so. He notes that for several days Rachel did not tell anyone about his requests for sex although she testified that she thought he was not kidding. He points to Rachel's testimony that he actually said "I would pay you to have sex with you" and not "Will you have sex with me for $500?"; that he took no overt actions to follow through; and that she did not think that he would rape her or that anything bad was going to happen. He notes testimony that Rachel had been instructed to tell an adult when something inappropriate happened but that she said nothing until her mother pressed her. He also notes testimony that although he was extremely intoxicated that night, Rachel seemed calm and told his mother that everything was okay.

Appellant cites W. LaFave, *Substantive Criminal Law* § 11.1(b) to suggest that false charges of solicitation may result from a misunderstanding as to what the defendant said.[1] Appellant argues that a rhetorical question may appear to be a solicitation. He frames the issue before us as whether Rachel knew what was said. He contends that circumstantial evidence made it as likely that he made his statement in the subjunctive, *i.e.*, "I would have sex with you for $500," as that he asked Rachel to have sex with him for

---

[1] Objections to making solicitation a crime or to extending it to such minor crimes as adultery are sometimes based upon the fear that false charges may readily be brought, either out of a misunderstanding as to what the defendant said or purposes of harassment. Wayne R. LaFave, *Substantive Criminal Law* § 11.1(b) "Policy Considerations," at 193 (3d ed. 2004) (footnotes omitted). This risk is inherent in the punishment of almost all inchoate crimes, although it is perhaps somewhat greater as to the crime of solicitation in that the crime may be committed merely by speaking. *Id.*

Under Arkansas Code Annotated section 5-3-301(a) (Repl. 1997), a person solicits the commission of an offense if, with the purpose of promoting or facilitating the commission of a specific offense, he commands, urges, or requests another person to engage in specific conduct which would:

(1) Constitute that offense;

(2) Constitute an attempt to commit that offense;

(3) Cause the result specified by the definition of that offense; or

(4) Establish the other person's complicity in the commission or attempted commission of that offense.

$500 or $1000. Noting the presumption that a person intends the natural and probable consequences of his acts, *see Alexander v. State*, 78 Ark. App. 56, 77 S.W.3d 544 (2002), he concedes that intent would be proven "if the State proved that what was said was actually a solicitation seriously proposing sex for hire from this fourteen year old girl."

Appellant's reliance upon subsection 11.1(b) is misplaced. The introductory paragraph to Section 11.1 of Wayne R. LaFave, *Substantive Criminal Law* (3d ed. 2004), entitled "Common Law and Statutes," includes the following statement:

> For the crime of solicitation to be completed, it is only necessary that the actor *with intent that another person commit a crime*, have enticed, advised, incited, ordered or otherwise *encouraged that person to commit a crime*. The crime solicited need not be committed.

*Id.* at 189 (footnotes omitted, emphasis added). Appellant was not charged under our criminal code with the offense of solicitation, and the abstract shows no argument at trial that the victim herself was encouraged to commit a crime. Appellant was charged with and convicted of sexual indecency with a child, which includes the element of soliciting a person less than fifteen years old to engage in sexual intercourse, deviate sexual activity, or sexual contact.

Both appellant and the State rely upon our recent case of *Jimenez v. State*, 83 Ark. App. 377, 128 S.W.3d 483 (2003), an appeal from a conviction for solicitation to commit capital murder, where we wrote:

> The crime of solicitation requires neither a direction to proceed nor the fulfillment of any condition. It is, in essence, asking a person to commit a crime. The gravamen of the offense is in the urging. *Gardner v. State,* 41 Md. App. at 200, 396 A.2d at 311.

*Jimenez v. State, supra.* Because the present appeal is from a conviction other than the crime of solicitation, we find *Jiminez* of limited guidance.

The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Rush v. State,* 324 Ark. 147, 919 S.W.2d 933 (1996). *See also George v. State*, 358 Ark. 269, ___ S.W.3d ___ (2004); *Cummings v. State*, 353 Ark. 618, 110

S.W.3d 272 (2003) (citing with approval our decision in *Gabrion v. State*, 73 Ark. App. 170, 42 S.W.3d 572 (2001), where we stated that "lewd," which is not defined in our criminal code, is a common word with an ordinary meaning).

Under Arkansas Code Annotated section 5-14-110(a)(1) (Supp. 2001), as noted previously in this opinion, a person commits sexual indecency with a child if the person solicits another person who is less than fifteen years of age. . . to engage in sexual intercourse, deviate sexual activity, or sexual contact. The definitions of the verb "solicit" in *Webster's Third New International Dictionary* 2169 (1993) include the following:

> 3 : to make petition to : ENTREAT, IMPORTUNE . . . ; *esp* : to approach with a request or plea (as in selling or begging). . .

> 4 : to move to action . . .

> 7 : to endeavor to obtain by asking or pleading : plead for . . . ; *also* to seek eagerly or actively

> 10 : to serve as a temptation . . . [.][2]

■ In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Jimenez v. State, supra.* Here, the evidence reviewed in such a light shows that appellant offered the fourteen-year-old victim money in exchange for sex. She understood that he meant sexual intercourse, and she took his request to be a serious one. The fact finder clearly could have found from appellant's words and actions that, within the ordinary meaning of the word "solicit," he solicited the child to engage in sexual intercourse, activity, or contact. Therefore, we hold that the evidence was sufficient to show that appellant, by offering the girl money in exchange for sex, solicited her to engage in sexual intercourse, deviate sexual activity, or sexual contact.

Appellant also directs us to the requirement of culpability. When a statute does not prescribe a culpable mental state, as is the case here, culpability is nonetheless required and is established only

---

[2] Examples omitted; irrelevant definitions omitted.

if a person acts purposely, knowingly, or recklessly. Ark. Code Ann. § 5-2-203 (Supp. 2001). A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result. Ark. Code Ann. § 5-2-202(1).

■ We find no merit in appellant's argument that he was merely rhetorically questioning the fourteen-year-old girl about sex rather than soliciting her, and that he had no intent to make such a statement. There was testimony that he offered to pay money in exchange for sex, that he offered her more money after she refused him, and that he kissed her on the neck after encouraging the young boys in her charge to kiss her. This constituted substantial evidence from which the fact finder could have found that appellant intended his remarks to solicit sex with the girl. Therefore, we affirm appellant's conviction for the crime of sexual indecency with a child.

Affirmed.

CRABTREE, J., agrees.

ROAF, J., concurs.

ANDREE LAYTON ROAF, Judge, concurring. I concur in affirming this case. Although appellant Donald Heape argues that the evidence was insufficient to support his conviction for sexual indecency with a child, and contends specifically that he lacked the culpable mental state required for the commission of the offense, he did not make this argument to the trial court in his motion to dismiss, but merely recited his actions and stated that it "does not constitute a solicitation." Heape further argued to the trial court that he requested no specific sexual act as should be required by the statute, as a basis of his motion to dismiss.

Accordingly, I conclude that the argument Heape now raises on appeal, that there was insufficient evidence of the requisite culpable mental state, is not preserved. Heape's remarks to a fourteen-year-old girl clearly were crude and out of place. However, rather than holding that the rather lame and ridiculous statements made by Heape and the attendant circumstances of this case constituted evidence beyond a reasonable doubt of his criminal intent, I would affirm without addressing the merits. The statute at issue has not been interpreted by this court or the supreme court in its present form. It has evolved significantly over

the years, from requiring that a minor be enticed or lured into a vehicle, house or other place for a conviction for "indecent proposal to minor" to attain,[1] to the misdemeanor offense of "sexual solicitation of a child" less than fourteen years old,[2] to the felony offense of "sexual solicitation of a child" less than fourteen years old,[3] to the current "sexual indecency" felony with a person less than fifteen years old.[4] Like the traveler who jokes about bombs while waiting in the security line at the airport, Mr. Heape is paying dearly for his loose tongue, in this instance with a felony conviction.

---

[1] It shall be unlawful for any person with lascivious intent to entice, allure, persuade, or invite, or attempt to entice, allure, persuade or invite, any child under fourteen (14) years of age to enter any vehicle, room, house, office or other place for the purpose of proposing to such child the performance of an act of sexual intercourse or an act which constitutes the offense of sodomy for the purpose of proposing the fondling or feeling of the sexual or genital parts of such child or the breast of such child, if the child be a female, or for the purpose of committing an aggravated assault on such child, or for the purpose of proposing that such child fondle or feel the sexual or genital parts of such person. Ark. Stat. § 41-1126 (Repl. 1964).

[2] (1) A person commits sexual solicitation of a child, if being eighteen (18) years old or older, he solicits any person not his spouse who is less than fourteen (14) years old to engage in sexual intercourse, deviate sexual activity or sexual contact.

(2) Sexual solicitation of a child is a class A misdemeanor. Ark. Stat. § 41-1810 (Repl. 1977).

[3] (a) A person commits sexual solicitation of a child if, being eighteen (18) years old or older, he solicits any person not his spouse who is less than fourteen (14) years old to engage in sexual intercourse, deviate sexual activity, or sexual contact.

(b) Sexual solicitation of a child is a Class D felony. Ark. Code Ann. § 5-14-110 (Repl. 1997) (the 1995 Amendment reclassified this offense as a "Class D felony").

[4] (a) A person commits sexual indecency with a child if:

(1) Being eighteen (18) years old or older, the person solicits another person who is less than fifteen (15) years of age or who is represented to be less than fifteen (15) years of age to engage in sexual intercourse, deviate sexual activity, or sexual contact. Ark. Code Ann. § 5-14-110 (Supp. 2003).